**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| EMMANUEL CHUKWUEBUKA UZOECHI, | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | **CIVIL NO.  JKB-16-3975** |
| **DR. DAVID WILSON,** *et al.*, | * | |
| | * | |
| **Defendants** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

This case comes before the Court on remand from the Fourth Circuit.  Last year, this Court dismissed Plaintiff's complaint.  (*See* Order, ECF No. 26.)   Plaintiff appealed the dismissal, but the Fourth Circuit determined that this Court had left two claims unaddressed and therefore dismissed the appeal and remanded the matter to this Court to address those remaining claims.  *Uzoechi v. Wilson*, 713 F. App'x 223 (4th Cir. 2018).  Upon receiving the mandate from the Court of Appeals, this Court reopened the case and gave the parties one month to provide additional briefing on those claims.  (*See* Order reopening case, ECF No. 35.)  In response, the Defendants moved for judgment on the pleadings or, alternatively, for summary judgment (ECF No. 37).  Plaintiff has responded in opposition (ECF No. 39) and the Defendants have replied (ECF No. 40).  The Defendants' motion is therefore ripe for review.  There is no need to hold a hearing to resolve the matter.  *See* Local Rule 105.6 (D. Md. 2016).  Plaintiff has failed to overcome various immunities, properly state claims, or provide evidence demonstrating essential elements of both claims.  Accordingly, the Court will grant the Defendants' motion and,

construing that motion as one for summary judgment, grant judgment in the Defendants' favor on both counts. Combined with the earlier order of dismissal (ECF No. 26), this now amounts to dismissal of Plaintiff's entire case, and the Clerk will be instructed to close the case.

## I.     *Background*

The Court will treat the Defendants' motion as one for summary judgment. Plaintiff was on notice that the Court may treat the Defendants' motion as such given the title of the Defendants' motion, *see Pevia v. Shearin*, Civ. No. ELH-13-2912, 2015 WL 629001, at *3 (D. Md. Feb. 10, 2015), and he responded to the substance of the Defendants' exhibits, attached an exhibit of his own in opposition, and frequently relies on evidence outside the corners of his complaint. Given that the Court is treating the motion as one for summary judgment the following facts, and the inferences to be drawn from them, are taken in the light most favorable to Plaintiff, who is the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### a.     *Plaintiff's interaction with MSU*

Plaintiff attended Morgan State University ("MSU" or "the University") starting in 2011. (*See* Transcript, ECF No. 37-20.) In February 2015, a female MSU student ("the Complainant") falsely accused Plaintiff of sexual assault. (*See* Wiggins Email, ECF No. 37-2; Letter to USCIS, ECF No. 39-2.). The incident was reported to the MSU Police, and Plaintiff was indicted in the Circuit Court for Baltimore City on February 24, 2015 for rape in the second degree and sexual offense in the second degree. (Indictment, ECF No. 37-4.) Plaintiff was arrested and placed in custody. (*See* Compl. § III.4, ECF No. 1 (alleging that Plaintiff was in custody from "02/25/15 – 08/27/15").) Three days later, Defendant Seymour E. Chambers, Chief Judicial Officer in the Office of Student Rights & Responsibilities at MSU, sent Plaintiff a notice of interim suspension. (ECF No. 37-6.) This notice stated that, pursuant to Section 8(e) of the University's Code of

Student Conduct ("Student Code"), Plaintiff was suspended pending disciplinary proceedings. (*Id.*; *see* Student Code, ECF No. 37-5.)

On March 13, 2015, Defendant Chambers sent Plaintiff a "Notice of Judicial Conference." (ECF No. 37-7.) This notice stated that Plaintiff had been accused of violating a specific section of the Student Code, and that he was "directed to report" to a judicial conference on March 19. (*Id.*) Plaintiff was represented by counsel, and on March 18, 2015, Plaintiff's counsel informed Defendant Chambers that Plaintiff was detained at Central Booking in Baltimore and therefore would be unable to attend on March 19. (ECF No. 37-9.) He requested that the "judicial conference" scheduled for March 19 be "postponed indefinitely." (*Id.*) He also requested that the interim suspension be postponed. (*Id.*) It does not appear that Defendant Chambers replied, or that he postponed the conference or suspension.

On April 6, 2015, Defendant Chambers again sent Plaintiff a notice. (ECF No. 37-10.) This document included notice of two charges against Plaintiff for violations of the Student Code, and stated that Plaintiff was required to attend a hearing scheduled for April 21. (*Id.*) Plaintiff's counsel responded in a letter dated April 16. (ECF No. 37-11.) Plaintiff's counsel wrote that Plaintiff would be unable to attend the April 21 hearing because he was still in jail. Plaintiff's counsel again requested indefinite postponement of the hearing and of the interim suspension. (*Id.*) Again, it does not appear that he received a response.

The hearing was not postponed. On April 21, while Plaintiff was still in jail, a Judicial Board held a disciplinary hearing. (*See* Official Notice of Decision and Sanction(s), ECF No. 37-12.) According to the Official Notice of this hearing later sent to Plaintiff, the Judicial Board found Plaintiff "Responsible" for sexual misconduct, and violations of University regulations, procedures, and policies. (*Id.*) The Judicial Board found, by a preponderance of the evidence,

five facts, including that Plaintiff was in the Complainant's room on the night in question, that she "told him several times that she did not want to engage in any sexual activity" and that Plaintiff "did not comply with her wishes." (*Id.*) The Student Code permits accused students to present witnesses and affidavits at a disciplinary hearing, but Plaintiff did not attempt to call witnesses or submit an affidavit.

In the Official Notice of the disposition of this hearing, beneath the "Finding of Fact(s)" section, it read:

> SANCTION(S):    Subsequent to the finding(s) of responsibility, the following sanction(s) have been recommended by the University Judicial Board to the Office of Student Judicial Affairs, and are effective as of April 21, 2015:
>
> •     EXPULSION-Permanent separation of the student from the University. A notation will appear on the student's transcript. The student will also be barred from the University premises. A student who is expelled from the University is not eligible for the return of tuition, room or board fees, or other fees paid or owed to the University. Expulsion requires administrative review and approval by the President.

(*Id.*) Based on this document it would seem that the Judicial Board *recommended* a sanction of expulsion, which then needed to be reviewed and approved by the President. Plaintiff, however, maintains that he was in fact expelled. Given the standard of review, the Court will assume that he was expelled. Regardless, it is understandable that someone who read this letter, perhaps quickly and in a stressful situation, would believe that they had in fact been expelled from the University, even if they were not. (The effective date certainly implies expulsion.)

The Official Notice was sent on April 28 and informed Plaintiff of his right to appeal. It appears that Plaintiff timely appealed on or about May 7. (*See* October 13 Letter, ECF No. 37-15 (referencing May 7 appeal); Aff. Dr. Kevin M. Banks ¶ 6, ECF No. 37-22 (referencing "May

2015 appeal"); Letter to USCIS (stating that Plaintiff's "Lawyer submitted an appeal to the University on May 7th, 2015).) It is unclear what the substance of the appeal was.

On August 26, 2015, Plaintiff's criminal charges were dropped by the State's Attorney for Baltimore City. (August 28 Letter, ECF No. 37-14.) The Court will briefly note that this is all it knows of the disposition of the criminal charges against Plaintiff. The Court is only aware that the charges were dropped, not why, and that Plaintiff was released from custody the following day, on August 27. (*See* Compl. § III.4.) On August 28, Plaintiff's counsel sent a letter to the Office of Student Judicial Affairs informing them that the charges had been dropped and requesting that "the decision to expel [Plaintiff] be overturned." (August 28 Letter.) For unexplained reasons, no one at MSU appears to have acted on Plaintiff's May 7 appeal or responded to Plaintiff's counsel's August 28 letter.

Sometime in the fall of 2015, Plaintiff obtained new counsel, and on October 13, 2015, that counsel sent a letter to Defendant Dr. Kevin Banks, Vice President of Student Affairs at MSU. In that letter, Plaintiff's new counsel explained that the charges against Plaintiff had been dropped, and he asked that "the expulsion be removed from his record" because Plaintiff was trying to transfer to another institution. (October 13 Letter.) Plaintiff's new counsel also inquired as to the status of Plaintiff's May 7 appeal. (*Id.*)

According to Defendant Banks, after he received this letter, he reviewed Plaintiff's file. (Aff. Dr. Banks ¶ 6.) According to Defendant Banks, this review "revealed" that Plaintiff's appeal was "not in the file" and that the University had never acted on the recommended expulsion by the Judicial Board (again, Plaintiff maintains that he was expelled). (*Id.*) According to Defendant Banks, he somehow "confirmed" that Plaintiff had filed a timely appeal, and then met with Plaintiff's new counsel on December 3, 2015 "to hear Plaintiff's appeal."

(*Id.*)  Defendant Banks then wrote a memorandum to MSU's President, Defendant Dr. David Wilson, "recommending that the recommended sanction be modified."  (*Id.*; *see* December 17 Memorandum, ECF No. 37-16.)

In this memorandum, Defendant Banks noted several "circumstances surrounding this case" which lead him to recommend that Plaintiff's sanction be modified.  (December 17 Memo.)  Defendant Banks explained that Plaintiff had been unable to attend the hearing due to incarceration and that "[a]lthough the Code of Student Conduct allows a hearing to proceed without the accused present . . . in this case, hearing from the Accused may have enhanced the trier of facts' ability to assess the evidence."  (*Id.*)  Defendant Banks also highlighted issues with the Judicial Board hearing itself, including that the Complainant apparently testified that she kissed Plaintiff on the cheek after signing him out of the building, *i.e.*, after the alleged sexual misconduct.  It is not entirely clear what Defendant Banks made of this testimony, but his phrasing in the memorandum seems to suggest he believed that this was exculpatory evidence that was perhaps not given enough weight by the Judicial Board.[1]  Based on these issues, Defendant Banks recommended that instead of expelling Plaintiff, the final sanction should be either a warning or "probation with a directive that [Plaintiff] have no contact with the Complainant."  (*Id.*)  According to handwritten notes on the memorandum, Defendant Wilson accepted the second proposed sanction on December 17, 2015.  (*Id.*)

Plaintiff was not notified of that decision for over one month.  On January 20, 2016, Defendant Banks sent Plaintiff a letter informing him that the President had not accepted the recommended sanction of expulsion, but that Plaintiff was on probation for the Spring 2016 Semester and that he was forbidden from having contact with the Complainant.  (January 20

---

[1] Defendant Banks wrote:  "The Complainant testified that she kissed the Accused on the cheek after signing him out of the building?  This occurred after the alleged sexual misconduct."

Letter, ECF No. 37-17.) This letter informed Plaintiff that he could appeal the decision, and Plaintiff apparently did. (*Id.*; *see* Mar. 19 Email, ECF No. 37-19.) The sanction, however, was not overturned. In an email sent to Plaintiff on March 19, 2016, Defendant Banks informed Plaintiff that Plaintiff's "probationary status [would] remain in effect until the end of the semester." (Mar. 19 Email.) However, Defendant Banks noted in the email, "upon completion of the semester, I will rescind the probation so you will not have a disciplinary record upon graduation." (*Id.*)

It appears that Defendant Banks made good on that promise. Plaintiff graduated from MSU in the spring of 2016 with a 3.828 GPA. (*See* Transcript.) There is no record of a disciplinary infraction on Plaintiff's transcript.

### b. *Plaintiff's complaint in this Court*

Plaintiff, now without counsel, filed a complaint on December 13, 2016 in this Court naming several University officials as Defendants, as well as the State's Attorney who prosecuted Plaintiff, Stacie Sawyer ("Defendant Sawyer"). Plaintiff did not name the State of Maryland as a Defendant, nor did he seem to name MSU, although he did include MSU in a parenthetical in his caption, and he requested injunctive relief against the State of Maryland. (*See* Compl. pp. 1, 7-8.)

Plaintiff filed a form complaint, and under "Statement of Claim" wrote:

1- On April 28th 2015, **Seymour E Chambers (Morgan State University)** violated the plaintiff's Title IX act of 1972. He wasn't granted due process to attend the hearing that took place on campus; the plaintiff was in detention while the hearing went on. On this same day, the university failed to protect the plaintiff from such a false and destructive allegation. The plaintiff's F-1 status was also terminated on a false basis.
• Mr. Seymour E Chamber's OFFICIAL NOTICE OF DECISION AND SANCTION(s) would explain the above complaint.

2-      After failing to protect the plaintiff, **Dr. Kevin Banks, Mr. Seymour E Chambers and President David Wilson (Morgan State University)** demonstrated gross **NEGLIGENCE** while handling the allegation made against the plaintiff.  Their negligence resulted in the plaintiff's inability to effectively transfer to another institution **(Towson University)** since he had already suffered defamation at Morgan State University.  The plaintiff was also very worried about his safety especially as violent crimes were rampant on campus.  This act of NEGLIGENCE is supported by the fact that it took more than 8 months (May 7th 2015 - January 20th 2016) for Morgan State University to overturn the **Expulsion**.

•       **Dr. David Wilson and Dr. Kevin Banks** of **Morgan State University** were directly responsible for this negligence.

3-      **Seymour E Chambers (Morgan State University)** tampered with evidence surrounding the allegation.  Morgan State University suppressed some evidence and released some to the plaintiff's defense attorney.  Tampering with these evidence incapacitated the plaintiff in preparing for defense in the court of law, an act of vicious discrimination against the plaintiff.   Morgan State University had an interest in making sure the plaintiff got convicted; that would have been a basis to justify their unwarranted decision in expelling the plaintiff.

•       On May 1st 2015 the plaintiff's defense attorney notified **Mr. Chambers** that some but not all evidence surrounding the alleged incident were released.

4-      Stacie Sawyer dragged the criminal case that was initiated against the plaintiff without any reasonable grounds to believe that the allegations made against the plaintiff were true.  This tort of malicious prosecution led to the false imprisonment of the plaintiff (**6months 2 days**, from 02/25/15 – 08/27/15).  Studies have shown that inmates turn to feel guilty of the charges they face the longer they are in detention.  Stacie Sawyer exposed the plaintiff to mental and psychological fatigue, making him vulnerable to take a plea deal.  Still, when presented with one, it was rejected and all charges were dropped.  **NOT** too different from detaining somebody for an alleged **"MURDER"** when **NO ONE** is dead.

The plaintiff suffered emotional distress and incurred some injuries while in detention.  He lost his Job, lost his internship, and failed to graduate in **May 2015** as scheduled due to the unwarranted **LONG** detention. [sic]

(Compl. § III.)  Plaintiff requested $20,000,000 and asked for injunctive relief.  Specifically,

Plaintiff requested that MSU "**CLEARLY** outline the risks Nigerians (especially males) are

taking by enrolling at Morgan State University in their student code," that "the **STATE OF**

**MARYLAND** . . . provide more training to its employees," and that the Court "order the

**STATE OF MARYLAND** to put in place **SANCTIONS** or fines for its employees who would

engage in any form of unwarranted misconduct at the expend [sic] of innocent people." (*Id.* § IV.)

Plaintiff asserted that federal jurisdiction was proper on the basis of Diversity of Citizenship and, under the section for "The Amount in Controversy" Plaintiff typed "$20,000,000 (TWENTY MILLION)." (Compl. § II.) In order (it seems) to explain that figure, Plaintiff handwrote the following: "(i) Infliction of emotional distress (ii) violation of Title IX act of 1972 (iii) Tampering with evidence (MSU) (iv) Failure to provide a safe environment (MSU) (protection) (v) gross negligence (MSU) (vi) personal injuries." (*Id.* § II.B.3.)

On July 5, 2017, Plaintiff moved for Summary Judgment (ECF No. 12) and on July 18 the Defendants moved to dismiss or in the alternative for summary judgment (ECF No. 15). The Court construed the following three claims from Plaintiff's complaint: (1) a violation of Title IX by Defendants Chambers and MSU; (2) a claim of negligence against Defendants Banks, Chambers, Wilson, and MSU; and (3) a claim of malicious prosecution against Defendant Sawyer. (*See* Mem. 3, ECF No. 24.)

Based on Plaintiff's allegations in his complaint, and the substance of the Official Notice of Decision and Sanction(s) referenced in Plaintiff's complaint, the Court granted the Defendants' motion to dismiss. The Court dismissed Plaintiff's Title IX claim because he failed to allege a foundational element of a Title IX claim: discrimination on the basis of his gender. The Court dismissed Plaintiff's negligence claim because, other than conclusory references to "gross NEGLIGENCE" and "NEGLIGENCE" Plaintiff did not allege any duty or breach of that duty. The Court dismissed Plaintiff's malicious prosecution claim because Plaintiff failed to allege malice, or any motive "other than that of bringing an offender to justice." *See Exxon Corp*

*v. Kelly*, 381 A.2d 1146, 1149 (Md. 1978). Plaintiff noted an appeal on October 2, 2017. (ECF No. 29.)

On March 1, 2018, the Court of Appeals released an opinion dismissing Plaintiff's appeal and remanding the case to this Court. *Uzoechi*, 713 F. App'x at 224. The Circuit read Plaintiff's complaint as containing two additional claims that this Court did not address: a violation of Plaintiff's due process rights and a claim of intentional infliction of emotional distress. *Id*.

After receiving the mandate from the appellate court, an order issued reopening the matter on March 23, 2018. In that order, the Court welcomed the parties to submit simultaneous briefing on the two unaddressed claims on or before April 23, and permitted the parties to respond to any opposing briefing by May 7. (Order reopening case, ECF No. 35.) On April 2, Plaintiff filed a "Briefing on the Court of appeals for the Fourth circuit court." (ECF No. 36.) In this one page document, Plaintiff argued that "[a]ccording to the briefing issued by Morgan State University (***Qimma S. Najeeullah***) on ***November 22nd 2016,*** it can be seen and affirmed that," Plaintiff's "due right was violated" because the disciplinary hearing was held when he was not present, and that emotional distress was inflicted on the plaintiff because Plaintiff submitted an appeal on May 7, 2015 and did not receive a response until January 20, 2016; a delay that "prevented the plaintiff from transferring to [a different institution]."[2]

On April 20, the Defendants moved for a judgment on the pleadings or in the alternative for summary judgment. (ECF No. 37.) Plaintiff filed a response in opposition to that motion on April 25 (ECF No. 39), and the Defendants replied on May 4 (ECF No. 40). Therefore, the Defendants' motion is ripe for review.

---

[2] Qimmah Najeeulah works for MSU in the Office of International Services and wrote a letter to United States Citizenship and Immigration Services after Plaintiff graduated, asking that his F-1 Visa status be reinstated. (*See* ECF No. 39-2.)

## II.    *Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

## III.    *Analysis*

The Court will grant summary judgment for the Defendants on both of Plaintiff's remaining claims for several reasons. First, insofar as Plaintiff is attempting to bring claims against the State of Maryland or MSU, those claims are barred by the Eleventh Amendment.  So are any claims against individual Defendants that seek relief that would be paid by the State of Maryland.  Plaintiff may seek prospective injunctive relief against individual Defendants, but his claims fail for various reasons.  Plaintiff fails to properly state a due process claim, fails to present evidence demonstrating the third element of such a claim, and, regardless, the claim is barred by qualified immunity.  Similarly, Plaintiff's claim for intentional infliction of emotional distress fails to overcome statutory immunity, and Plaintiff has failed to state such a claim or present evidence demonstrating such a claim. Finally, the Court will revise in part its earlier

order in this case and dismiss Plaintiff's other claims under Rule 12(c) as opposed to Rule 12(b)(6).

### a. *Eleventh Amendment Immunity*

Plaintiff's claims against the State of Maryland and MSU, as well as his claims against all Defendants insofar as Plaintiff requests monetary relief that would be paid by the State of Maryland, are barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 663-64 (1974); *Middlebrooks v. Univ. of Md. at College Park*, 980 F. Supp. 824, 828 (D. Md. 1997); *Estate of Leysath v. Maryland*, No. GJH-17-1362, 2018 WL 1225087, at \*4 (D. Md. Mar. 6, 2018) ("Maryland's waiver of sovereign immunity under the MTCA is not enough to waive immunity guaranteed by the Eleventh Amendment."); Md. Code Ann., Educ. § 14-101(a)(2), (3) ("[Morgan State] University is an instrumentality of the State and a public corporation . . . . The University is an independent unit of State government."). Plaintiff does not appear to seek monetary or prospective injunctive relief against any individual Defendant, so it appears that all of Plaintiff's claims are barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); (Compl. § IV (requesting $20,000,000, but not from a particular Defendant, and requesting injunctive relief from the State of Maryland).)[3]  Still, out of an abundance of caution, the Court will consider Plaintiff's remaining claims insofar as Plaintiff may be seeking prospective injunctive relief against any of the individual Defendants.

---

[3] By "all of Plaintiff's claims" the Court is referring to the two claims this memorandum  is addressing, Plaintiff's due process claim and his intentional infliction of emotional distress claim.  The Court will briefly note that, although it did not address the issue in its previous memorandum, the Eleventh Amendment would bar Plaintiff's other, previously dismissed, claims as well, except for Plaintiff's Title IX claim.  *See Litman v. George Mason Univ.*, 186 F.3d 544, 553 (4th Cir. 1999) (finding that acceptance of Title IX funding amounts to waiver of Eleventh Amendment immunity for Title IX suits).

b. ***Due Process***

Plaintiff's due process claim fails for two reasons. He has failed to state a claim under Rule 12(c), and failed to demonstrate a violation of a clearly established constitutional right necessary to overcome qualified immunity.

Generally speaking, a claim that a state official has violated the Constitution is brought under 42 U.S.C. § 1983, which "provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* Furthermore, "there is no vicarious liability under § 1983." *Allen v. Columbia Mall Inc.*, 47 F. Supp. 2d 605, 612 n.12 (D. Md. 1999). So, a plaintiff bringing a claim grounded in an alleged violation of the Constitution by a State official must a) bring the claim under Section 1983, b) identify the specific constitutional right allegedly infringed, and c) specifically identify *which* State official(s) violated that right.

Given that brief background, Plaintiff's due process claim fails under Rule 12(c) to state a claim upon which relief can be granted. The only time "due process" is mentioned in his complaint is the first paragraph under the "Statement of Claim" ("42 U.S.C. § 1983," "Section 1983," or even the word "Constitution" are not present in his complaint). That paragraph states in part: "He [*i.e.*, Plaintiff] wasn't granted due process to attend the hearing that took place on campus; the plaintiff was in detention while the hearing went on." This statement does not reference Section 1983, does not identify the specific constitutional right that was allegedly violated (though it certainly seems to be a violation of procedural due process under the 14th amendment), and does not identify the specific actors who violated it.

This third pleading failure is particularly important, and highlights an issue present throughout Plaintiff's complaint and case: who is the actor responsible for the harm? This claim is brought against "Seymour E Chambers (Morgan State University)." So, is the allegation that Defendant Chambers, himself, prevented Plaintiff from attending the hearing? Or that MSU did? Or both? Or is it that Defendant Chambers violated his due process rights in some other manner? Or does his complaint lie with the MSU policies that permitted the hearing to proceed while Plaintiff was absent? This confusion does not arise from an overly technical reading of Plaintiff's complaint. Without a specific actor, the Court is adrift in terms of how to analyze Plaintiff's complaint. Importantly, that means that the *Defendants* are similarly adrift. A complaint, particularly one brought by a *pro se* Plaintiff, should not be dismissed because of a technical failure to employ a particular legal phrase, but neither should it be read as properly stating a claim only because of its use of a particular legal phrase. Plaintiff may have included the words "due process" in his Title IX claim, but his use of the passive voice and general lack of explanation leaves the Court guessing at the substance of this due process claim and against whom it is directed.

Still, the Court will consider the merits of a possible due process claim brought by Plaintiff. Plaintiff cannot amend his complaint through briefing, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013), but considering Plaintiff's briefing throughout this case, the Court can glean that Plaintiff's attempted due process claim is something like this: Defendant Chambers violated Plaintiff's due process rights under the 14th amendment by holding a disciplinary hearing without Plaintiff in attendance.[4] (*See* "Briefing on the Court of appeals for the Fourth circuit court [sic]," ECF No.

---

[4] It seems that Plaintiff is attempting to bring this claim against MSU as well, but as explained above, MSU is immune under the Eleventh Amendment from any claim.

36 (stating that "plaintiff's due right was violated [because] a hearing was held on campus while the plaintiff was still in detention" (internal quotation marks omitted)); Response to Attorney Matthew P. Reinhart briefing p. 4, ECF No. 39 (arguing that the "Violation of the plaintiff's due process right" was that a hearing was held while Plaintiff was in detention).)  The Court will now explain why, even if Plaintiff had stated that claim in his complaint, the Court would still grant summary judgment for the Defendants.

The doctrine of qualified immunity "ensures that [state] officials can perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991).  Summary judgment is "a particularly appropriate procedure for determining an official's entitlement to qualified immunity."  *Id.* at 261.  To determine whether the Defendants here are entitled to qualified immunity on Plaintiff's due process claim, "[t]wo inquiries must be satisfied."  *Hodge v. College of S. Md.*, 121 F. Supp. 3d 486, 500 (D. Md. 2015) *aff'd* 646 F. App'x 294.

> (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful.

*Id.*  The Court will first discuss why Plaintiff was not deprived of a constitutional right and then discuss why, even if the Court were to find the opposite, Defendants would still be entitled to qualified immunity because the quality and quantity of process owed to an individual in Plaintiff's situation is not clearly established.

"In order for the plaintiff[] to succeed on [his] procedural due process claim, [he is] obliged to show (1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d

138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).[5]

The Court will assume without deciding that Plaintiff had a cognizable property interest of which he was deprived by state action. *See Tigrett v. Rector and Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985)) ("The Supreme Court has assumed, without actually deciding, that university students possess a 'constitutionally protectable property right' in their continued enrollment in a university."); *Smith v. Rector and Visitors of Univ. of Va.*, 78 F. Supp. 2d 533, 538 (W.D. Va. 1999) (finding that a student alleged "substantive harms . . . including . . . understandable anxiety about being 'expelled,' whether technically true or not"). Plaintiff's procedural due process claim fails (at least) because he has failed to allege or demonstrate the third element, that the process itself was constitutionally inadequate.

On its face, holding a disciplinary hearing in a student's absence, particularly when that student is physically unable to attend because he has been incarcerated, seems like a procedural problem. This Court, however, is not moved by mere appearances, but rather must look to the law. And, according to the law, due process does not hinge on whether a student was physically present at his disciplinary hearing.

The "process due in any particular case is governed by what 'the particular situation demands.'" *Doe v. Alger*, 228 F. Supp. 3d 713, 729 (W.D. Va. 2016) (quoting *Morrissey v.*

---

[5] To make out a claim for a violation of substantive due process, Plaintiff must show the same first two elements, as well as "that the [Defendants'] action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995). Expulsion from a University is not "so far beyond the outer limits of legitimate government action that *no process* could cure the deficiency." It does not appear that Plaintiff was attempting to bring a substantive due process claim, but insofar as he was, it fails for this reason. The Fourth Circuit stated that Plaintiff alleged that the "University's disciplinary procedure violated his due process rights," 713 F. App'x at 224, so it does not appear that the Fourth Circuit thought Plaintiff brought a substantive due process claim either. Still, out of an abundance of caution, the Court addresses that potential claim here.

*Brewer*, 408 U.S. 471, 481 (1972). "Although students are entitled to some due process protections in a disciplinary hearing, the required protections need not mirror a full-scale adversary proceeding." *Keerikkattil v. Hrabowski*, 2013 WL 5368744, at *6 (D. Md. Sept. 23, 2013) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975)); *see Butler v. Rector and Bd. of Visitors of College of William and Mary*, 121 F. App'x 515, 520 (4th Cir. 2005).

At bottom, "the due process clause requires notice and an opportunity to be heard." *Smith*, 78 F. Supp. 2d at 537 (internal quotation marks omitted). It does not require that a student be physically present at his disciplinary hearing. Courts in this district have outlined something of a procedural floor when a student "faces a long-term suspension." *Keerikkattil*, 2013 WL 5368744, at *6. In that instance, "disciplinary proceedings . . . are generally conducted consistent with due process when . . . four procedural elements are present," and none of those elements require the student to be physically present at his disciplinary hearing. *See id.* (quoting *Sohmer v. Kinnard*, 535 F. Supp. 50, 53 (D. Md. 1982)).[6]

In other words, physical absence from a hearing is not an automatic constitutional deficiency; whether a person is able to physically attend his disciplinary hearing only matters insofar as it affects his right to be heard. For example, in *Smith*, the court found that a student stated a claim for a due process violation when a hearing was held in his absence. 78 F. Supp. 2d at 538. However, the court did not hold that it was the student's physical absence that created

---

[6] They are:

    (1) The student must be advised, in advance of the hearing, [of] the charges against him.
    (2) He is entitled to the names and a summary of the testimony of witnesses to be used against him, *although he may not be necessarily entitled to be confronted by the witnesses at the hearing.*
    (3) The student has a right to be heard in his own defense and to be present and present evidence on his behalf, a*lthough this right does not necessarily extend to the actual appearance before the ultimate legal authority to administer discipline.*
    (4) No serious disciplinary action can be taken unless it is based upon substantial evidence.

*Keerikkattil*, 2013 WL 5368744, at *6 (emphasis added).

the constitutional concern.  Rather, the court found that a school administrator may have told the student that the hearing was postponed when it was not.  *Id.*  That is, the student claimed to have been misled, and thus not given any opportunity to present his side of this story at the hearing.  *That* was the constitutional deficiency, not simply his absence from the room.

Further, if a student does not take proper advantage of the process made available to him, a court may be unable to determine if that process was insufficient.  *See Osei v. Univ. of Md. Univ. College*, 202 F. Supp. 3d 471, 484-85 (2016) *vacated on other grounds*, 710 F. App'x 593.  In *Osei*, the student was informed of the charges, and "retained the services of an attorney who tried unsuccessfully to resolve the case prior to the hearing."  *Id.* at 484.  The student "did not participate in the . . . hearing, and he was expelled."  *Id.*  The court found that the student's due process claim failed "for a number of reasons," the first of which was that he "neglected to appear on his behalf at the . . . hearing."  *Id.* at 485.  Because the student was not present at the hearing, the court was unable to determine whether the student's other complaints about the hearing process, *e.g.*, that he was unable to confront witnesses, were valid.  *Id.*

Plaintiff here was in a situation that was materially different from that involving the student in *Osei*.  Plaintiff did not simply miss the hearing; he was physically unable to attend because he was in jail.  Still, *Osei*, and other cases, make clear that the crucial question in this case is not whether Plaintiff was able to attend the hearing.  The crucial question is whether Plaintiff was given notice of the charges and an opportunity to be heard.  He was.

It is undisputed that Plaintiff was given notice of the hearing, and an explanation of the charges, on multiple occasions.  As for an opportunity to be heard, it is undisputed that Plaintiff was physically unable to attend the hearing.  But Plaintiff does not allege, nor present evidence tending to show, that he was unable to present his side of the story at that hearing, and he does

not contest the evidence that suggests he had an opportunity to do so. (*See* Student Code § XIV.B.8, XIV.B.13 (outlining rules for presenting witnesses and affidavits at hearings).) He does not allege, for example, that he (or his counsel) asked that he be able to call in to the hearing, or that he (or his counsel) tried to submit affidavits to the Judicial Board, or that his counsel tried to go to the hearing in Plaintiff's stead, or that he tried to have a witness appear at the hearing on his behalf. Certainly, Plaintiff does not allege that he was *denied* such opportunities. Put simply, Plaintiff does not allege, or present evidence of, any constitutional deficiency in the disciplinary process surrounding the April 21 hearing other than that it was held while Plaintiff was in jail. But holding a hearing in a student's absence is not a *per se* violation of the student's procedural due process rights. Although Plaintiff was in different circumstances than those prevailing in *Osei*, there is one crucial similarity: it does not appear that either took advantage of the process that was available to them, rendering inconsequential the process that was not. It is undisputed that Plaintiff could have at least tried to communicate his side of the story at the hearing. Because he did not do so, this Court, like the court in *Osei*, is unable to weigh the problems that may have arisen if Plaintiff had participated in the hearing (by whatever means were available to him).

To be clear, it is not the Court's job to determine best practices for MSU's disciplinary process. The Court is asked to determine whether that process was constitutionally deficient. As far as the Court can tell, it was not. And, in the context of a Section 1983 action for violation of due process rights, "as far as the Court can tell" is far enough. That is because the Defendants are protected by qualified immunity.

The Defendants are protected by qualified immunity unless the legal principle they allegedly violated was "clearly established." *See District of Columbia v. Wesby*, 138 S. Ct. 577,

589-90 (2018). The Supreme Court has recently explained that this standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* (internal quotation marks omitted). As the Court of Appeals for the Fourth Circuit has "emphasized repeatedly, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks and alteration omitted)). When it comes to the quality and quantity of process owed to a student facing disciplinary charges, there are few bright lines. *See Painter v. Doe*, 2016 WL 4644495, at *6 (W.D.N.C. Sept. 6, 2016) ("While the right to procedural due process is well established, due process rights in the context of a college disciplinary hearing are not."). The Defendants' conduct does not fall beyond those few bright lines—they provided notice and an opportunity to be heard—and thus they enjoy qualified immunity from this suit.

Even if MSU's disciplinary process was less than perfect in this case, the Court is satisfied that MSU's officers did not violate any clearly established constitutional law and therefore they are shielded from suit by the doctrine of qualified immunity. When one student accuses another of sexual misconduct, school officials are caught in an extremely difficult situation, balancing the pressures of Title IX and a tempestuous cultural climate against the value of a fair inquiry and, in the case of a state school, the constitutional rights of the accused. When school officials act beyond clearly established boundaries, the courts remain ready to vindicate the rights of those who are harmed. But absent such transgressions this Court, following established principles of qualified immunity, will hold its hand.

c. *Intentional Infliction of Emotional Distress*

Plaintiff's intentional infliction of emotional distress claim fails insofar as it is brought against any of the individual Defendants because they are protected by statutory immunity. *See*

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b).[7]  State personnel are immune from suit unless they acted with malice or gross negligence.  *Id.*  Aside from conclusory allegations of "gross NEGLIGENCE" Plaintiff did not allege facts that would constitute gross negligence, and he has presented no evidence of such facts.  The closest Plaintiff comes is the evidence that Defendants misplaced his appeal, which is not close enough.  That apparently careless act delayed the resolution of Plaintiff's disciplinary proceeding, but, even making inferences in the Plaintiff's favor, it was not an act of gross negligence.  Plaintiff has similarly failed to allege or present facts demonstrating malice.  Plaintiff's complaint contains some conclusory references to "discrimination" but it is unclear in what manner Plaintiff was discriminated against, and there are simply no allegations or facts that suggest that the Defendants acted out of some malicious desire to harm Plaintiff in particular.  Accordingly, the Defendants are immune from this claim.

The Court will briefly note that even if the Defendants were not protected by Eleventh Amendment and statutory immunity, Plaintiff's intentional infliction of emotional distress claim would still fail.  In order to state a claim for intentional infliction of emotional distress under Maryland law, Plaintiff must demonstrate "(a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d) extreme emotional distress."  *Vance v. CHF Int'l.*, 914 F. Supp. 2d 669, 682 (D. Md. 2012).  Plaintiff did not state such a claim.  He wrote "infliction of emotional distress" as one of six injuries he claimed to have suffered. (Compl. § II.B.3.)  Under the "Statement of Claim" he alleged that  Defendant Sawyer maliciously prosecuted him and kept him detained longer than he should have been, "exposed the plaintiff to mental and psychological fatigue," and that he "suffered emotional distress and

---

[7] To reiterate, if Plaintiff is attempting to bring this claim against the State of Maryland it is barred by the Eleventh Amendment.  *See Estate of Leysath*, 2018 WL 1225087, at *4.

incurred some injuries while in detention." (Compl. § III.4.) An allegation that one has suffered emotional distress is not sufficient to state a claim for intentional infliction of emotional distress.

Further, reading Plaintiff's complaint liberally and making all inferences in his favor, Plaintiff has failed to demonstrate the second and fourth elements of the claim (at least). Intentional infliction of emotional distress is a tort reserved for truly outrageous conduct, "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992) (internal quotation marks omitted). In addition to extreme conduct, the distress must be extreme as well. "The emotional distress must be so severe that no reasonable man could be expected to endure it. One must be unable to function; one must be unable to tend to necessary matters." *Vance*, 914 F. Supp. 2d at 682 (internal quotation marks and citations omitted). Plaintiff has clearly experienced some emotional distress as a result of this process. But the type of conduct that he has alleged—*e.g.*, holding a hearing in his absence, misplacing his appeal for several months—is not "beyond all possible bounds of decency." And he does not allege emotional distress "so severe that no reasonable man could be expected to endure it." Plaintiff argues that "every inmate undergoes emotional distress just by being in [jail]," and suggests that his distress is akin to that of people in "marriages [and] relationships." (Response to Attorney Matthew P. Reinhart briefing at 2.) This tort is "reserved for those wounds that are truly severe and incapable of healing themselves." *Vance*, 914 F. Supp. 2d at 682 (quoting *Caldor, Inc. v. Bowden*, 625 A.2d 959, 963 (1993)). It is not meant as an all-purpose bandage for the psychological harm that people face in bad situations. The Defendants are immune from Plaintiff's intentional infliction of emotional distress claim, Plaintiff has failed to state this claim,

and Plaintiff has failed to present evidence supporting this claim. Thus the Court will grant summary judgment for the Defendants on this claim.

### d. *The Court's earlier order*

Finally, the Court will revise in part its earlier order granting the Defendants' motion to dismiss (ECF No. 26).[8] In that Order, the Court dismissed Plaintiff's Title IX, negligence, and malicious prosecution claims under Rule 12(b)(6), having construed the Defendants' motion to dismiss as a motion under that rule. The more proper vehicle for dismissal, however, would have been Rule 12(c), as the Defendants had answered Plaintiff's complaint prior to filing their motion. The Court will therefore consider the Defendants' previous motion to dismiss as one brought under Rule 12(c) and, because the difference between the two rules "does not have a practical effect," and the standard for a motion under both rules is the same, the Court will ratify the granting of the Defendants' earlier motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

### IV. *Conclusion*

The State of Maryland and MSU are immune from Plaintiff's claims under the Eleventh Amendment. The claims against the individual Defendants are barred by the Eleventh Amendment insofar as they seek relief that would be paid by the State. Plaintiff failed to demonstrate that he was given insufficient process and the individual Defendants are shielded from his due process claim by the doctrine of qualified immunity. The individual Defendants are similarly shielded from Plaintiff's intentional infliction emotional distress claim by state statutory immunity, and furthermore Plaintiff failed to state, or provide evidence supporting,

---

[8] The Fourth Circuit has explained that because the Court did not address two additional claims in Plaintiff's complaint, the Court's earlier order is not a final order. *Uzoechi*, 713 F. App'x at 224. Therefore, the Court may revise that earlier order. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims . . . .").

such a claim. Accordingly, summary judgment will be granted to the Defendants on both counts. The Court will revise its earlier order (ECF No. 26) and dismiss Plaintiff's additional claims under Rule 12(c) for the same reasons as stated in its first memorandum opinion (ECF No. 24).

DATED this 24th day of May, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge